**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| HUMBERTO MIGA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JARED R. JAMIS and BKD, LLP, )<br>)<br>Defendants. )<br>)<br>) | Civil No. 2019-85 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff Humberto Miga's "Motion for Leave to File Second Amended Complaint." [ECF 81]. Defendant BKD, LLP ("BKD") filed an opposition and plaintiff replied. [ECFs 94, 98, 102].

## I.  BACKGROUND

Miga is a resident and citizen of St. Thomas, U.S. Virgin Islands. First Amend. Compl. ("FAC") [ECF 31] ¶ 3. Jamis is a resident of Wichita, Kansas who was living on St. Thomas at the time of the subject accident. *Id.* ¶ 4. BKD, Jamis' employer at the time of the accident, is a Missouri corporation with its principal place of business in Springfield, MO. *Id.* ¶ 5.

Miga claims that on May 12, 2019, while he was driving west on Frenchman's Bay Road, he was hit by Jamis in a head-on collision. FAC [ECF 31] ¶¶ 6, 7. According to Miga, the accident occurred because Jamis failed to stay in his eastbound lane and instead veered into Miga's lane. *Id.* ¶ 7. Plaintiff also claims Jamis admitted to being under the influence of alcohol at the time. *Id.* ¶ 12. Miga asserts two counts in the FAC—for negligence/gross negligence and for

*respondeat superior*.[1]  *Id.* ¶¶ 11-20.  In the instant motion, filed on August 17, 2020, Miga seeks to supplement the facts and add a claim of negligent supervision against BKD.  [ECF 81] at 1.

## II.     LEGAL STANDARDS

A.     <u>Motions to Amend Under Federal Rule of Civil Procedure 15(a)</u>

Rule 15(a) provides that leave to amend a complaint should be freely given when justice so requires.  However,

> [w]hile Rule 15(a) provides that leave to amend should be "freely given," a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.

*Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

"In the Third Circuit, delay alone does not justify denying a motion to amend." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F. 3d 267, 273 (3d Cir. 2001)).  Rather, the delay must either be undue, such that it places "an unwarranted burden on the court," or it must be prejudicial, such that it places "an unfair burden on the opposing party."  *Synthes*, 281 F.R.D. at 225 (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).  "Implicit in the concept of undue delay is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." *Synthes*, 281 F.R.D. at 225 (quotation marks omitted).  Thus, in assessing delay, the court must

---

[1] Miga initially filed his complaint in the Virgin Islands Superior Court on August 16, 2019.  Compl. [ECF 1-2].  Jamis removed the matter to the District Court of the Virgin Islands on September 27, 2019.  [ECF 1].  On January 15, 2020, Miga moved to amend the original complaint to add BKD as a defendant and to add a claim of *respondeat superior* against BKD.  [ECF 16].  The Court granted the motion to amend on March 11, 2020.  [ECF 30].

balance any imposition or prejudice caused by the delay against the plaintiff's reasons for the delay.  *Id.* at 225-26 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)).

"Futility" denotes that "the complaint, as amended, would fail to state a claim upon which relief may be granted."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  "In assessing futility, the district court applies the same standard of legal sufficiency as applies under [FRCP] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  In other words, the court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."  6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2019).

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment," and such prejudice must be substantial or undue.  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (quotation marks omitted)).  Thus, the defendant "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely."  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).  Courts evaluate prejudice "by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum."  *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2017 WL 4404565, at *2 (D.N.J. Oct. 4, 2017).  Ultimately, whether to grant leave to amend lies within a court's

discretion.  *Pennsylvania Emps. Ben. Tr. Fund v. Zeneca, Inc.*, 499 F.3d 239, 252 (3d Cir. 2007).

B.  <u>Negligent Supervision</u>

While the Virgin Islands Supreme Court has not yet determined the soundest rule for the Territory regarding the doctrine of negligent hiring, training, retention, or supervision,[2] in *Bell v. Radcliffe*, the Virgin Islands Superior Court conducted a *Banks* analysis to determine the soundest rule for the Virgin Islands.[3]  First, the Superior Court recognized that it and the District Court of the Virgin Islands previously noted that claims of negligent retention had the following five elements:

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiffs injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries.

2015 WL 5773561, at *11 (V.I. Super. Apr. 30, 2015) (quoting *Canonier v. Mahogany Run Condo. Ass'n, Inc.*, 54 V.I. 210, 219-20 (V.I. Super. 2011) (citing *Mala v. Marine Serv. Mgmt.*, 2009 WL 2170071, at *2 (D.V.I. July 20, 2009))).  Next, the *Bell* court noted that the state courts had not uniformly adopted a test or list of elements for claims of negligent retention beyond the general requirement that plaintiffs claiming negligence had to establish "a duty owed by the defendant employer to the plaintiff, a breach of that duty by the defendant employer, and damages

---

[2] Jurisdiction in this Court is based on the diversity of the parties' citizenship under 28 U.S.C. § 1332(a)(1). Therefore, the Court applies the law of the Virgin Islands.  See *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) ("[A] federal court must apply the substantive laws of its forum state in diversity actions.") (citation omitted).

[3] When there is no common law rule that addresses an issue, courts in the Virgin Islands must conduct a so-called *Banks* analysis.  See *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 977-78 (V.I. 2011).  Such an analysis requires consideration of "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands."  *Nicholas v. Damian-Rojas*, 62 V.I. 123, 129 (V.I. Super. 2015) (citations omitted).

proximately caused by the defendant employer's breach of duty." *Bell*, 2015 WL 5773561, at *11 (quoting 29 Am. Jur. *Trials* 267, § 5 (1982)). Since issuing the *Bell* decision, the Superior Court has twice adopted and applied the *Bell* standard for negligent retention to claims for negligent hiring, training, retention, or supervision. *See Guardian Ins. Co. v. Estate of Knight-David*, 2017 WL 2814039, at *3 (V.I. Super. Apr. 7, 2017); *Canton v. Gov't of the V.I.*, 2016 WL 9454118, at *5 (V.I. Super. Apr. 4, 2016). The Court will therefore apply the *Bell* standard to plaintiff's claim for negligent supervision.

### III. DISCUSSION

A. <u>The Parties' Positions</u>

According to plaintiff, since the filing of the FAC, he has had an opportunity to depose Jamis as well as Jamis' manager, Dustin Redger, who was in the car with Jamis at the time of the accident. [ECF 81] at 1. Plaintiff claims that as a result of these depositions and other discovery, he became aware of new facts. *Id.* at 1-2. Specifically, plaintiff claims that since filing the FAC, he received confirmation that Jamis filed a claim for worker's compensation for injuries sustained in the accident through BKD and that it was accepted by BKD's insurance carrier. *Id.* at 2. According to plaintiff, this fact is *prima facie* evidence that Jamis was acting within the scope of his employment at the time of the accident. *Id.* Plaintiff also claims that since filing the FAC, he learned that Redger, "was drinking alcohol along with Jamis at the time of the collision." *Id.* Lastly, plaintiff claims that he learned that at 11:47 p.m. on May 11, 2020, Jamis had a three-minute phone call with Kansas-based BKD partner Tony Kruse, the individual who sent Jamis and Redger on the assignment to St. Thomas. *Id.* Plaintiff avers that these additional facts "support plausible claims of negligence against BKD for (1) negligent supervision and (2) negligence based on failing to have a policy concerning alcohol use on company trips." *Id.* Plaintiff further

Case: 3:19-cv-00085-RAM-RM   Document #: 120   Filed: 11/16/20   Page 6 of 14

*Miga v. Jamis and BKD, LLP*
Civil No. 2019-85
Page 6

contends that defendants will not be prejudiced by the proposed amendment because it is still early in the litigation process, because the additional claim sounds in tort, and because he only learned of the facts supporting the Proposed Second Amended Complaint ("PSAC") on August 6 and 7, 2020 (when Jamis was deposed) and on August 13, 2020 (when Redger was deposed). *Id.* at 1-2.

BKD opposes the motion on the grounds that the proposed amendment would be futile. [ECF 94] at 1.  First, BKD argues that plaintiff's allegations that Jamis drove after consuming alcohol, was tired from having traveled all day, and was unfamiliar with St. Thomas and with driving on the left side of the road do not support plaintiff's claim that Jamis was incompetent at the time of the accident. *Id.* at 2.  Further, BKD argues that even if Virgin Islands Police Department ("VIPD") Officer Peru, the officer who responded to the accident, notified VIPD Command that there was a "possible" drunk driver, plaintiff fails to allege Jamis exhibited any alcohol impairment prior to the accident such that Redger knew or should have known that Jamis was incompetent. *Id.*  According to BKD, it is neither illegal to drive after consuming alcohol, nor is it illegal to drive with an open container of alcohol in the car. *Id.*  BKD further contends that being unfamiliar with St. Thomas and never having driven on the left-hand side of the road is not negligence *per se* and that plaintiff's allegation that Jamis was incompetent to drive because he was tired from having traveled all day is unsupported by any facts. *Id.* at 3.  Rather, BKD notes, when Jamis was asked at his deposition whether he had "been up" for almost twenty-four hours prior to the accident, Jamis testified that it was not a fair statement because he "always sleep[s] on planes." *Id.* at 3.

Next, BKD contends that plaintiff fails to allege any facts in support of his claim that Redger had supervisory authority over Jamis. *Id.* at 4-6.  Although BKD concedes that Redger

held the title of BKD "Manager" and was deemed the "in-charge" on the trip, BKD does not agree that these titles conferred supervisory authority. *Id.* at 4. According to BKD, plaintiff fails to allege any facts whatsoever regarding Redger's function and responsibilities within BKD, let alone facts that support his claim that Redger had supervisory authority over Jamis. *Id.* Citing Redger's deposition testimony as well as the deposition testimony of BKD partner Kruse, BKD contends that Redger's only authority with respect to Jamis was to tell him what work to perform and then to review that work. *Id.* at 4-6. BKD further notes that both men also testified that Redger neither had the authority to discipline Jamis, nor the authority to bind BKD contractually.[4] *Id.*

In his reply, plaintiff defends the sufficiency of the allegations in the PSAC. First, plaintiff again notes that the PSAC alleges the existence of an employment relationship between Jamis and BKD by referencing Jamis' receipt of worker's compensation benefits from BKD following the accident. [ECF 98] at 2. Next, plaintiff argues that the PSAC alleges that Jamis was incompetent at 2:30 a.m. on May 12, 2019, the time of the accident, because it states that: (1) Jamis left his home in Kansas to go to the airport at approximately 4:30 a.m. on May 11, 2019; (2) both men had a stressful day of travel because their flight from Houston to St. Thomas had to be re-routed, causing them to arrive in St. Thomas at approximately 6:00 p.m.; (3) although Jamis had no experience driving on the left-hand side of the road and had never been to St. Thomas, he drove the rental car from the St. Thomas airport to the villa where they were to stay, where both men drank a rum and coke; (4) both men then left the villa and purchased a six-pack of beer; (5) both men had dinner and alcoholic drinks at the Tap & Still restaurant in Havensight; and (6) between

---

[4] BKD contends that only managing partners have the authority to bind the company contractually. [ECF 94] (citing Kruse Dep. [ECF 94-2] at 5-6).

9:30 p.m. and midnight, both men left the restaurant—in the rental car that Jamis was driving—to return to the villa. *Id.* at 2-3. As noted, the accident occurred several hours later.

Regarding the third element of negligent supervision—the employer's actual or constructive knowledge of its employee's incompetence—plaintiff dismisses BKD's reliance on Jamis' and Redger's depositions wherein the two men testify that Redger was not Jamis' manager or supervisor, and claims to have adequately alleged that BKD had actual or constructive knowledge of Jamis' incompetence. [ECF 98] at 7-9. Similarly, after noting that BKD does not challenge plaintiff's allegations regarding the fourth element—that Jamis caused the accident—plaintiff turns finally to the fifth element of his claim for negligent supervision. [ECF 98] at 9-11. In this regard, plaintiff contends that he adequately alleges that BKD's negligent supervision of Jamis was the proximate cause of his injuries. *Id.* at 9-10.

B.  <u>Analysis</u>

Plaintiff's proposed addition of Count 3 will be allowed. At this stage, the Court is not persuaded that the amendment would be futile. First, BKD does not dispute that Jamis was one of its employees. Therefore, plaintiff has stated the first element of his claim for negligent supervision.

Plaintiff has also adequately alleged the second element of his negligent supervision claim—that Jamis was incompetent at the time of the accident. In this regard, the Court concludes that the PSAC contains the following factual allegations which, under *Iqbal*, are entitled to an assumption of truth:

> 15. . . . Jamis did not have experience driving on the left.

\* \* \*

21. On the day of their scheduled departure, Redger and Jamis met at the airport in the early morning of May 11, 2019.

22. Jamis believes he would have reached the airport about an hour before his scheduled flight: thus, he would have left his home even earlier.

23. . . . Although [their initial] flight was scheduled to depart at 6:40 a.m., it was delayed.

\* \* \*

26. . . . [Jamis and Redger arrived in St. Thomas] in the evening, around 6:00 p.m.

\* \* \*

28. . . . it was determined that Jamis would drive and be the only authorized driver for the vehicle.

\* \* \*

33. Once the men got to the Villa Jamis drank rum and coke and Redger drank rum and coke, as well.

\* \* \*

35. The men then left the Villa and went to Kmart where Redger bought a six-pack of Presidente beer . . . .

\* \* \*

38. A stop was made at the Tap & Still in Havensight where the men drank more alcohol and reportedly had some food.

\* \* \*

54. [At the time of the accident,] Jamis admitted that he had reverted to driving in the right lane as if he was in the States.

55. The rental vehicle collided with Plaintiff's vehicle head on at full speed which Jared R. Jamis testified was 30-40 m.p.h. Jamis said he "tapped" the [brakes] "at the last minute."

> 56. According to Jamis, although the two men had been looking at "Google maps" on Redger's phone while driving, Jamis does not recall if looking at the map distracted him from driving.
>
> * * *
>
> 59. Officer Peru also noted in the [police] report [regarding the accident] that Jamis had admitted to consuming alcohol.
>
> * * *
>
> 64. Officer Peru called VIPD Command about a possible drunk driver, but receiv[ed] no response (by this time it was around or past 4 a.m.). . . .

PSAC [ECF 81-1] ¶¶ 15, 21-23, 26, 28, 33, 35, 38, 54-56, 59, 64.  Accepting these allegations as true, the Court finds that plaintiff has sufficiently supported his contention that Jamis was incompetent at the time of the accident.  The Court need not find that plaintiff has established Jamis' incompetence at the time of the accident, only that an inference of incompetence is more than merely a possibility.[5]

Next, the Court must consider whether plaintiff has sufficiently pled that BKD had actual or constructive knowledge of Jamis' incompetence—the third element of plaintiff's negligent supervision claim.  In support of this element, plaintiff alleges the following in the PSAC:

> 11. BKD, through Kruse, selected an "Audit Team" comprised of two BKD Certified Professional Accountants (CPA) to send to St. Thomas in May of 2019 to serve the client on St. Thomas.
>
> 12. BKD, though Kruse, selected BKD Manager Dustin Redger ("[Redger]") as the "in-charge" of the Audit Team selected to represent BKD during the trip to St. Thomas.

---

[5] *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citations omitted).

  13. Redger joined BKD in 2012. In 2019, he was a Manager in BKD's Wichita office.

  14. BKD, through Kruse, also selected Jamis as the Associate that reported to, and assisted Redger during the trip.

* * *

  33. Once the men got to the Villa Jamis drank rum and coke and Redger drank rum and coke, as well.

* * *

  35. The men then left the Villa and went to Kmart where Redger bought a six-pack of Presidente beer . . . .

* * *

  38. A stop was made at the Tap & Still in Havensight where the men drank more alcohol and reportedly had some food.

* * *

  40. At the time the men left Tap & Still, and even before that time, Redger had actual knowledge that Jamis had consumed alcohol, had been travelling all day, and was unfamiliar with St. Thomas, and had no experience with driving on the left.

* * *

  68. The same morning of the collision, May 12, 2019, BKD Manager Redger sent a text to BKD Partner, Anthony (Tony) Kruse at 11:40 a.m., falsely stating: "Tony we were in a car accident last night. . . .".

PSAC [ECF 81-1] ¶¶ 11-14, 33, 35, 38, 40, 68. In other words, plaintiff has pled that (1) Redger was Jamis' supervisor at the time of the accident; (2) Redger knew that Jamis had no experience driving on the left-hand side of the road; (3) Redger knew that Jamis had been drinking alcohol prior to the accident; (4) Redger drank alcohol with Jamis prior to the accident; (5) Redger was in

the car with Jamis at the time of the accident; and (6) Redger's knowledge of Jamis' incompetence at the time of the accident can be imputed to BKD.

Although BKD argues vociferously that plaintiff fails to allege any facts that establish Redger's supervisory authority, *see* [ECF 94] at 4-6, plaintiff need only allege facts which, if accepted as true, state a plausible claim to relief. *See* Fed. R. Civ. P. 8(a)(2) (complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."). Here, plaintiff alleges—and BKD concedes—that Redger's title was "Manager" and that BKD, through Kruse, designated Redger the "in-charge" on the trip. Plaintiff also alleges that Kruse designated Jamis the "Associate" who reported to and assisted Redger on the trip. Accepting those facts as true, the Court concludes that plaintiff has satisfied his pleading burden as to the third element of his claim for negligent supervision. That both Redger and Kruse testified that Redger lacked supervisory authority does not, in the context of the instant motion to amend the complaint, alter the Court's analysis. The Court, in considering plaintiff's motion to amend the FAC, may only consider the sufficiency of the allegations in the PSAC. *See Falco v. Zimmer*, 2014 WL 12910938, at *1 (D.N.J. June 10, 2014) ("Thus, if the proposed amendment is frivolous or advances a claim or defense that is legally insufficient *on its face*, the court may deny leave to amend.") (quotation marks omitted) (emphasis added); *Litgo New Jersey, Inc. v. Jackson*, 2008 WL 11383859, at *1 (D.N.J. May 22, 2008) ("[O]n a motion to amend a complaint, the Court looks only to the pleadings."). Thus, the Court concludes that plaintiff has adequately pled the third element of his claim of negligent supervision—that, through Redger, BKD had actual or constructive knowledge of Jamis' incompetence.

Further, although BKD does not challenge plaintiff's allegations regarding the remaining two elements of his claim of negligent supervision, the Court notes that the PSAC is adequate as

*Miga v. Jamis and BKD, LLP*
Civil No. 2019-85
Page 13

to both. Regarding the fourth element—that the employee's act or omission caused plaintiff's injuries—plaintiff alleges that Jamis was driving the car that collided with plaintiff's car. *See* PSAC [ECF 81-1] ¶¶ 53, 55, 88. Regarding the fifth element—that the employer's negligence in supervising the employee was the proximate cause of the plaintiff's injuries—plaintiff states the following:

> . . . BKD, LLP is liable to Plaintiff for its negligent supervision of Jamis in that it failed to prevent Jamis from conducting himself in a manner that created an unreasonable risk of harm to Plaintiff by (a) allowing Jamis to drive in a car it paid for and on an island with which it knew he was not familiar; (b) allowing Jamis to purchase and consume alcoholic beverages and to charge them as a business expense; (c) by allowing Redger to allow Jamis to drive in an inebriated state; because BKD, LLP knew or had reason to know that drinking alcohol and driving is unsafe and BKD, LLP knew or should have known of the necessity of creating guidelines to prevent drinking and driving while on company travel.

*Id.* ¶ 91. This is sufficient.

In addition, plaintiff has not demonstrated any undue delay in the filing of the instant motion. Plaintiff filed this motion on August 17, 2020, four days after completing Redger's deposition, which confirmed what he learned from documents produced after the FAC was filed—that Jamis received worker's compensation through BKD following the accident. [ECF 81] at 1-2. Also, plaintiff argues other discovery received after the FAC was filed revealed previously unknown facts about Redger's position within BKD and about his actions on the night of the accident. *Id.* at 2. Further, plaintiff has not shown any bad faith or dilatory motive.

Finally, in its October 20, 2020 scheduling order, the Court noted *inter alia* that certain fact depositions had not yet been taken and that defendants required additional time for expert disclosures. The Court therefore set a new deadline of December 31, 2020 for the completion of

*Miga v. Jamis and BKD, LLP*
Civil No. 2019-85
Page 14

all discovery.[6] Accordingly, the undersigned cannot see how either defendants or the Court would be prejudiced by the Court's allowing plaintiff to amend his complaint to add a claim of negligent supervision against BKD and supplement the facts.

## IV.   CONCLUSION

Accordingly, the premises considered, the following is hereby ORDERED:

(1) Miga's "Motion for Leave to File Second Amended Complaint" [ECF 81] is GRANTED;

(2) Miga shall file his Second Amended Complaint no later than November 20, 2020; and

(3) defendants shall respond to the Second Amended Complaint in accordance with the applicable rules.

**Dated:**   November 16, 2020            S\_____
                                           **RUTH MILLER**
                                           United States Magistrate Judge

---

[6]   [ECF 112] at 1.